UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARLOS FLORES,

    Defendant.
_____/

Case No: 24-20579

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT [29]**

Defendant Carlos Flores is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 23.) The matter is before the Court on Defendant's motion to dismiss the indictment. (ECF No. 29.) The Government filed a response opposing Defendant's motion (ECF No. 33), and Defendant filed a reply (ECF No. 34). The Court held a hearing on the motions on January 13, 2025.

In his motion, Defendant argues that § 922(g)(1) is unconstitutional as applied to him and that the Sixth Circuit's recent opinion establishing a dangerousness test for as-applied challenges to § 922(g)(1) is void for vagueness. (ECF No. 29, PageID.58-64.) For the reasons below, Defendant's motion is DENIED.

**I.   Background**

Defendant has one felony conviction in his criminal record. (ECF No. 33-7.) In 2019, he pled guilty to attempted carrying a concealed weapon ("CCW"). *Id.* at 119. He has other misdemeanor traffic and automobile-related offenses as well. *Id.* at 120-23.

**II.   Legal Framework**

1

In *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), the Supreme Court held that the Second Amendment codified a pre-existing "individual right." This right protects the ability to keep, for "lawful purposes," the kinds of weapons in common use, like those used for self-defense. *Id.* at 624-25. Following *Heller*, courts of appeals developed a two-step means-end test when considering the constitutionality of firearm regulations. *See New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 18 (2022). Under that test, courts asked whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood. *See id.* If the answer was yes or was unclear, the second step was to apply the appropriate level of scrutiny to assess the strength of the government's justification for regulating the exercise of the right. *Id.* at 18-19.

In *Bruen*, the Supreme Court rejected the means-end framework, stating that it involved "one step too many," and set forth a new text-and-history test. *Id.* at 19. Under this test, courts must first ask whether the plain text of the Second Amendment covers an individual's conduct—in other words, whether the individual is among "the people" as used in the Second Amendment. *Id.* at 24, 31-32. If the answer is yes, "the Constitution presumptively protects that conduct" and the regulation is not constitutional simply because it promotes an important interest. *Id.* at 17. Instead, the government must affirmatively prove "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

Although *Bruen* overturned the framework courts had developed based on *Heller*, some courts continued to reject as-applied constitutional challenges to § 922(g)(1) by relying on the dicta in *Heller*, 554 U.S. at 626, which states that "nothing in our opinion

2

should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *See, e.g.*, United States v. Gay, 98 F.4th 843, 846 (7th Cir. 2024). The Sixth Circuit, however, recently disagreed, finding that it must abide by "*Bruen*'s mandate to consult historical analogs." *See United States v. Williams*, 113 F.4th 637, 648 (6th Cir. 2024). After applying the text-and-history test, the *Williams* court concluded "that § 922(g)(1) is constitutional on its face and as applied to dangerous people." *See id.* at 662-63. In an as-applied challenge, the burden rests on the defendant to show that he is not dangerous. *Id.* at 662.

    The *Williams* court noted that criminal offenses can be divided into three categories. *Id.* at 663. The first category encompasses "crime[s] against the body of another human being, including (but not limited to) murder, rape, assault, and robbery." *Id.* The second category involves "crime[s] that inherently pose[] a significant threat of danger, including (but not limited to) drug trafficking and burglary." *Id.* "An individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous." *Id.* The third and "more difficult category involves crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements." *Id.* The court stated that "many of these crimes don't make a person dangerous." *Id.* at 659. When making a finding regarding dangerousness, courts "must focus on each individual's specific characteristics," and in doing so, "may consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction" "as well as other judicially noticeable information." *See id.* at 657-660. The *Williams* court "recognize[d] that courts may wish to consider information beyond criminal convictions

3

when assessing a defendant's dangerousness" but left "the question of what information is relevant for another day." *Id.* at 658 n.12.

## III. Analysis

Defendant argues *Williams's* dangerousness test is void for vagueness and unworkable. (ECF No. 29, PageID.60-64.) As mentioned above, the Sixth Circuit held that § 922(g)(1) is valid as applied to dangerous people. *Williams*, 113 F.4th at 662-63. The result in *Williams* is binding on this Court and must be applied. Accordingly, Defendant's challenge as to *Williams* is denied.

Defendant also argues he is not dangerous, so § 922(g)(1) is unconstitutional as applied to him. (ECF No. 29, PageID.58.) In support of this, Defendant claims carrying a concealed weapon is not inherently dangerous because the State of Michigan permits such conduct for persons who have a license. *Id.* at 58-59. On this point, Defendant points to a police report for the incident, included among the Government's exhibits, which indicates the gun was not loaded and did not have a magazine attached.[1] (ECF Nos. 34, PageID.169-70; 33-8, PageID.129.) He also claims his age at the time of the offense, 23 years old, should be considered in evaluating his conduct because his prefrontal cortex was not yet fully developed. *Id.* at 60.

Defendant's CCW conviction falls within the class of crimes that "inherently pose[] a significant threat of danger." *Williams*, 113 F.4th at 663. The presence of unregistered deadly weapons, carried by individuals who are violating the law, presents the potential for significant danger. *See United States v. Johnson*, No. 23-cr-20569, 2025 WL 226957,

---

[1] Normally, police reports are not judicially noticeable information because the facts therein are subject to reasonable dispute. *See Blackwell v. Nocerini*, 123 F.4th 479, 487-88 (6th Cir. 2024); Fed R. Civ. P. 201(b). Here, both parties cite to this police report (ECF No. 33-8) and neither raise any objection to it.

4

at *4-5 (E.D. Mich. Jan. 16, 2025) (finding defendant dangerous based on a CCW conviction and noting "concealed firearms are uniquely dangerous"). The Court rejects Defendant's argument that a CCW conviction is not dangerous conduct because it is permitted by the State when one has the relevant license. That is not a fine line between permissible conduct and punishable conduct posing significant danger to the community—it is a stark one. Among several other requirements and restrictions, obtaining a CCW permit in Michigan requires five hours of classroom instruction on gun safety and three hours of range firing training where an applicant must fire at least 30 rounds of ammunition. Mich. Comp. Laws §§ 28.425b(7), .425j. These requirements serve an important purpose to minimize danger, and an individual carrying a concealed firearm without following them has engaged in dangerous conduct.

While Defendant points to excerpts of a police report indicating the pistol was not loaded and did not have a magazine attached, he does not make any showing regarding the conflicting accounts in the Pre-Sentence Report ("PSR") and police report as to how he acquired the gun. (ECF Nos. 33-7, PageID.119; 33-8, PageID.129.) The PSR and police report indicate that Defendant stated he had recently bought the gun, while the PSR also includes a statement from Defendant that he found the gun the night of his arrest after stumbling upon it while walking intoxicated beside a road. *Id.* The Court acknowledges there is a difference between illegal CCW conduct that involves planning and executing a purchase versus conduct devoid of forethought,[2] but Defendant has the burden to show he is not dangerous, and he has not provided the factual foundation to

---

[2] This is especially true at an age where, as Defendant points out, areas of the brain that regulate impulse control, inhibition, and strategizing are not fully developed. *See* Mariam Arain et al., *Maturation of the Adolescent Brain*, 9 Neuropsychiatric Disease & Treatment, 452-54 (2013).

establish that his firearm possession was merely opportunistic. *See Williams*, 113 F.4th at 662. Accordingly, § 922(g)(1) is constitutional as applied to Defendant.

## IV.     Conclusion

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss the indictment.

SO ORDERED.

s/ Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: January 30, 2025

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 30, 2025, by electronic and/or ordinary mail.

s/ Marlena Williams
Case Manager